# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| VERNICE JOHNSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 16-cv-1059-TMP |
| | ) |
| CAROLYN W. COLVIN, | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | ) |

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

Before the court is plaintiff Vernice Johnson's appeal from a final decision of the Commissioner of Social Security[1] ("Commissioner") denying her application for disability insurance benefits under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401 *et seq*. On May 27, 2016, the parties consented to the jurisdiction of the United States magistrate judge pursuant to 28 U.S.C. § 636(c). (ECF No. 8.) This case was subsequently reassigned to the undersigned on March 13, 2017. For the reasons set forth below, the decision of the Commissioner is affirmed.

### I. PROCEDURAL HISTORY

---

[1] Carolyn W. Colvin was the Acting Commissioner of Social Security at the time this case was filed.

On April 11, 2013, and March 25, 2013, Johnson applied for disability benefits under Title II and Title XVI of the Act. (R. at 177, 182.) Johnson alleged disability beginning February 28, 2013, due to diabetes and high blood pressure. (R. at 182, 212.) The Social Security Administration ("SSA") denied these applications initially and upon reconsideration. (R. at 70-71, 98-99.) At Johnson's request, a hearing was held before an Administrative Law Judge ("ALJ") on March 10, 2015. On April 9, 2015, the ALJ issued a decision denying Johnson's request for benefits after finding that she was not under a disability because she retained the residual functional capacity ("RFC") to perform jobs that exist in significant numbers in the national economy. (R. at 9-26.) On January 19, 2016, the SSA's Appeals Council denied Johnson's request for review. (R. at 1.) Therefore, the ALJ's decision became the final decision for the Commissioner. (Id.) Subsequently, on March 23, 2016, Johnson filed the instant action. (ECF No. 1.) Johnson argues that (1) the ALJ gave improper weight to the opinion of medical examiner Paul Brown, Ph.D., (2) the ALJ should have considered the effect of Johnson's obesity upon her RFC, (3) the ALJ should not have given any weight to Johnson's GAF score, and (4) the ALJ erred by not including a function-by-function assessment in the RFC assessment.

## II. CONCLUSIONS OF LAW

**A.   Standard of Review**

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which she or he was a party.  "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."   42 U.S.C. § 405(g).  Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision.  Id.; Burton v. Comm'r of Soc. Sec., No. 16-4190, 2017 WL 2781570, at *2 (6th Cir. June 27, 2017); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007).  Substantial evidence is more than a scintilla of evidence but less than preponderance and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts from its weight.'"  Abbott v. Sullivan, 905 F.2d 918,

923 (6th Cir. 1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (quoting Smith v. Sec'y of Health & Human Servs., 893 F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may "not try the case de novo, resolve conflicts in the evidence or decide questions of credibility." Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (quoting Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)). The Commissioner, not the court, is charged with the duty to weigh the evidence and to resolve material conflicts in the testimony. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990); Prater v. Comm'r of Soc. Sec., No. 114CV01221STATMP, 2017 WL 2929479, at *1 (W.D. Tenn. July 10, 2017).

**B. The Five-Step Analysis**

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."

42 U.S.C. § 423(d)(1). Additionally, section 423(d)(2) of the Act states,

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

Under the Act, the claimant bears the ultimate burden of establishing an entitlement to benefits. Oliver v. Comm'r of Soc. Sec., 415 F. App'x 681, 682 (6th Cir. 2011). The initial burden is on the claimants to prove they have a disability as defined by the Act. Siebert v. Comm'r of Soc. Sec., 105 F. App'x 744, 746 (6th Cir. 2004) (citing Walters, 127 F.3d at 529); see also Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1173 (6th Cir. 1990). If the claimant is able to do so, the burden then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. Born, 923 F.2d at 1173; see also

-5-

Griffith v. Comm'r of Soc. Sec., 582 F. App'x 555, 559 (6th Cir. 2014).

Entitlement to social security benefits is determined by a five-step sequential analysis set forth in the Social Security Regulations. See 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be engaged in substantial gainful activity. See 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, a finding must be made that the claimant suffers from a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(5)(ii). In the third step, the ALJ determines whether the impairment meets or equals the severity criteria set forth in the Listing of Impairments contained in the Social Security Regulations. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d). If the impairment satisfies the criteria for a listed impairment, the claimant is considered to be disabled. On the other hand, if the claimant's impairment does not meet or equal a listed impairment, the ALJ must undertake the fourth step in the analysis and determine whether the claimant has the RFC to return to any past relevant work. See 20 C.F.R. §§ 404.1520(a)(4)(iv), (e), 416.920(a)(4)(iv). If the ALJ determines that the claimant can return to past relevant work, then a finding of not disabled must be entered. Id. But if the ALJ finds the claimant unable to perform past relevant work, then at the fifth step the ALJ must determine whether the

claimant can perform other work existing in significant numbers in the national economy. See 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.960(c)(1)-(2). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

**C. Weight of Dr. Brown's Opinion**

Johnson argues that the ALJ should have given Dr. Brown's opinion greater weight. On October 31, 2012, Johnson received a psychological examination from Robert Kennon, Ph.D. (R. at 315.) At this examination, Dr. Kennon considered Johnson's clinical history, made clinical observations, and administered the Wechsler Adult Intelligence Scale and the Wide Range Achievement Test. (Id.) In his description of the examination, Dr. Kennon noted multiple times that Johnson appeared to be exaggerating her symptoms and malingering. (R. at 316-19.) He observed that she had a greater ability to socialize than she claimed, that she tested as having a first grade math computation level despite her acknowledgement that managed her own money and had a tenth grade education, and that she could communicate in a logical and goal-directed fashion even though she claimed to know basic concepts such as the shape of a ball. (Id.) Dr. Kennon concluded that, while she tested as profoundly

-7-

mentally retarded, her test results were invalid due to her obvious falsification of her answers. (R. at 319.)

Dr. Brown examined Johnson on June 27, 2013. (R. at 381.) Dr. Brown disagreed with Dr. Kennon's opinion, observing that Johnson was cooperative with the interview and made a fair attempt to answer the questions put to her. (R. at 387.) After administering the Wechsler Adult Intelligence Scale and the Wide Range Achievement Test, Dr. Brown concluded that Johnson was depressed, possessed an IQ of 52, had mild mental retardation, and had very poor reading, language, and math skills. (R. at 390-91.) He also assigned her a GAF score of 45 to 50. (R. at 392.)

On October 16, 2013, state medical consultant Theren Womack, Ph.D., reviewed the mental health evidence on the record. (R. at 72-84.) After pointing out several inconsistencies that undermined the validity of Dr. Brown's examination of Johnson, Dr. Womack gave Dr. Brown's opinion very little weight. (R. at 77-78.) Dr. Womack concluded that Johnson had moderate limitations in her mental residual functional capacity that were not severe enough to result in finding her disabled. (R. at 82.)

When determining Johnson's RFC, the ALJ considered these and other medical opinions. The ALJ reviewed the results of Dr. Brown's examination and opinion; the ALJ gave both the results

and the opinion little weight due to its inconsistencies with Dr. Kennon's examination and opinion, such as Johnson's ability to list two colors of the flag for Dr. Kennon but not for Dr. Brown. (R. at 19.)

Johnson argues that the ALJ erred by giving Dr. Brown's opinion little weight because he provided no concrete reasons for his decision and should have credited the objective findings of Dr. Brown over the subjective opinion of Dr. Kennon. ALJs employ a "sliding scale of deference" for medical opinions depending upon the opinion's source. Norris v. Comm'r of Soc. Sec., 461 F. App'x 433, 439 (6th Cir. 2012). Opinions from treating sources, accepted medical sources with an "ongoing treatment relationship" with a claimant, typically merit the most deference. 20 C.F.R. § 404.1527(a)(2). For this reason, if an ALJ gives a treating source's opinion less than controlling weight, she or he must give "good reasons" for doing so. Austin v. Comm'r of Soc. Sec., 714 F. App'x 569, 573 (6th Cir. 2018). However, ALJs do not have the same obligation when weighing medical opinions from non-treating sources. See Martin v. Comm'r of Soc. Sec., 658 F. App'x 255, 259 (6th Cir. 2016)(finding that ALJs are exempted from the "reasons-giving requirement" when weighing medical opinions from non-treating sources), and Reeves v. Comm'r of Soc. Sec., 618 F. App'x 267, 273 (6th Cir. 2015)(same), and Karger v. Comm'r of Soc. Sec.,

-9-

414 F. App'x 739, 744 (6th Cir. 2011)(same). But see SSR 96-8p, 1996 WL 374184, *7 (S.S.A. July 2, 1996) ("The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."); SSR 96-5p, 1996 WL 374183, *5 (S.S.A. July 2, 1996) ("Adjudicators must weigh medical source statements under the rules set out in 20 [C.F.R. §§] 404.1527 and 416.927, providing appropriate explanations for accepting or rejecting such opinions."). Consequently, because Dr. Brown was not a treating source, the ALJ did not need to explain the reasons behind the weight he gave to Dr. Brown's opinion.

Furthermore, the ALJ's reason for giving the opinion little weight, that it was inconsistent with other opinions, was a valid basis for discounting the opinion. See 20 C.F.R. § 404.1527(c)(4)("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."); see also Justice v. Comm'r Soc. Sec. Admin., 515 F. App'x 583, 588 (6th Cir. 2013) ("In a battle of the experts, the agency decides who wins."). Thus, the court finds that the ALJ met all procedural and evidentiary requirements when assigning a weight to Dr. Brown's opinion.

D. **Effect of Obesity on RFC**

Johnson argues that the ALJ violated Social Security Ruling 02-1p by failing to consider her obesity when crafting her RFC determination. There is little information concerning Johnson's obesity in her medical records. The records document her weight as ranging from 210 pounds to 252 pounds. (R. at 290, 315, 326, 337-40, 342, 344, 346.) On February 3, 2013, a nurse at Haywood Park Community Hospital observed that Johnson appeared obese but also appeared to ambulate independently. (R. at 327.) State consulting physicians mentioned Johnson's weight when assessing her RFC. (R. at 44, 47, 51, 72, 80.) The court has not found and Johnson has not identified any further evidence relating to her obesity.

In SSR 02-1p, the SSA noted that obesity could impact claimants' RFC because it could alter their ability to function in an exertional or social capacity. See SSR 02-1p, 2002 WL 34686281, *6 (S.S.A. Sept. 12, 2002). However, the ruling "does not mandate a particular mode of analysis" for ALJs assessing how obesity impacts a claimant's RFC. Bledsoe v. Barnhart, 165 F. App'x 408, 411 (6th Cir. 2006). The Sixth Circuit has held that ALJs meet the requirements of SSR 02-1p if they credit "RFCs from physicians who explicitly accounted for [the claimant's] obesity." Miller v. Comm'r of Soc. Sec., 811 F.3d 825, 835 (6th Cir. 2016)(quoting Coldiron v. Comm'r of Soc. Sec., 391 F. App'x 435, 443 (6th Cir. 2010)). But see Shilo v.

Comm'r of Soc. Sec., 600 F. App'x 956, 959 (6th Cir. 2015) ("[Obesity] must be considered throughout the ALJ's determinations . . . ."). Here, the ALJ gave great weight to the opinions of the two medical consultants who may not have explicitly used the word obesity in their analysis but did reference Johnson's weight several times. The court finds this to be sufficient consideration of obesity. See Coldiron, 391 F. App'x at 443 (treating a medical source's mention of a claimant's weight as indicative that the source had considered the claimant's obesity); Bledsoe, 165 F. App'x at 412 (finding that an ALJ considered a claimant's obesity because the ALJ credited the opinions of state medical consultants that contained the caption "alleged impairment: obesity").

**E. Proper use of GAF Scores**

Johnson claims that the ALJ should not have considered her GAF score as a basis for reducing the severity of her mental health impairments. As discussed above, Dr. Brown assigned Johnson a GAF score of 45 to 50. The ALJ mentioned this score in his order, but there is no indication that the ALJ relied on it either to increase or decrease the severity of Johnson's mental health impairments. On top of which, ALJs are allowed to consider GAF scores when assessing a claimant's RFC. See Miller, 811 F.3d at 836 ("[A]lthough a GAF score is 'not essential to the RFC's accuracy,' it nevertheless 'may be of

considerable help to the ALJ in formulating the RFC.'" (quoting Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002))). Thus, the court finds that the ALJ did not err by mentioning Johnson's GAF score.

**F. Function-by-Function Requirement of RFC Analysis**

Johnson's final argument is that the ALJ committed reversible error by failing to include a function-by-function assessment of all exertional and nonexertional factors impacting her RFC as required by SSR 96-8p. In his analysis of Johnson's RFC, the ALJ noted that Johnson claimed her impairments affected her ability lift, squat, bend, stand, walk, kneel, complete tasks, concentrate, and understand and follow instructions. (R. at 17.) The ALJ then considered the objective medical records related to Johnson's diabetes and hypertension, the exertional limitations detailed by the state consultants, the mental limitations described by the state examiners, and Johnson's descriptions of her daily activities. (R. at 17–18.) The ALJ found that Johnson "has the residual functional capacity to perform medium work as defined in 20 [C.F.R. §§] 404.1567(c) and 416.967(c) except she is limited to only simple, routine tasks with occasional interpersonal contact with coworkers, the public and supervisors." (R. at 16.)

The SSA requires ALJs to "first identify the [claimant's] functional limitations or restrictions and assess his or her

work-related abilities on a function-by-function basis" before assigning the claimant an exertional level of work. See SSR 96-8p, 1996 WL 374184, *1. However, there is a difference "between what an ALJ must consider and what an ALJ must discuss in a written opinion." Delgado v. Comm'r of Soc. Sec., 30 F. App'x 542, 547-48 (6th Cir. 2002). While ALJs must consider each function individually, they are "not required to discuss each function" in their decisions. Lundby v. Comm'r of Soc. Sec., No. 16-13508, 2018 WL 1516915, at *6 (E.D. Mich. Mar. 28, 2018); Pendergrass v. Berryhill, No. 1:16-CV-145, 2018 WL 1460867, at *10 (E.D. Tenn. Mar. 23, 2018); Kees v. Comm'r of Soc. Sec., No. 3:16-CV-488-DJH-DW, 2018 WL 1411021, at *4 (W.D. Ky. Mar. 20, 2018); Long v. Comm'r of Soc. Sec., No. 3:16-CV-03089-TMP, 2018 WL 456209, at *13 (N.D. Ohio Jan. 16, 2018). Instead, the ALJs must "articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." Delgado, 30 F. App'x at 548 (quoting Bencivengo v. Comm'r of Soc. Sec., 251 F.3d 153 (Table), No. 00-1995, slip op. 5 (3d Cir. Dec. 19, 2000)); Rudd v. Comm'r of Soc. Sec., 531 F. App'x 719, 729 (6th Cir. 2013).

Here, the ALJ did all that was required of him. He examined the evidence in the record, determined what limitations impaired Johnson's ability to work, and resolved inconsistencies

-14-

in the record.  It is also evident from the ALJ's description of the exertional limitations provided by the state consultants that the ALJ considered Johnson's individual functional limitations before assigning her an RFC to perform medium work. Thus, the court finds that the ALJ complied with procedural requirements when assessing Johnson's RFC.

### III. CONCLUSION

For the foregoing reasons, the Commissioner's decision that Johnson is not disabled is affirmed.

IT IS SO ORDERED.

s/ Tu M. Pham<br>
TU M. PHAM<br>
United States Magistrate Judge<br>
<br>
April 12, 2018